# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | William J. Hibbler | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 C 3792 | **DATE** | 1/7/2005 |
| **CASE TITLE** | CABRINI-GREEN, et al. vs. CHA, et al. | | |

MOTION:

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendants' motion to dismiss plaintiffs' complaint [19-1] is GRANTED in part and DENIED in part. Defendant Terry Peterson is hereby dismissed. Count VI is hereby dismissed for failure to state a claim. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | 48 |
| | Notified counsel by telephone. | JAN 10 2005 | | |
| | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| JHC | courtroom deputy's initials | 11:9 WA L- NAC SOOZ | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

CABRINI-GREEN LOCAL ADVISORY )
COUNCIL, LOUISE GATES, YVONNE )
CLAY, VERONICA CAMPBELL, SARAH )
HAYNES, ANTHONY COMMON, )
RAMONA LEE, and VERONICA )
MARSHALL, )
                               )
        Plaintiffs, )      Case No. 04 C 3792
                               )
        v. )      JUDGE WILLIAM J. HIBBLER
                               )
CHICAGO HOUSING AUTHORITY and )
TERRY PETERSON, )
                               )
        Defendants. )

DOCKETED

JAN 1 0 2005

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants' motion to dismiss Counts I through V and VII of the complaint pursuant to Fed. R. Civ. P. 12(b)(1), and Counts II through VI pursuant to Fed. R. Civ. P. 12(b)(6). Defendants also move the Court to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims, Counts VII and VIII. Finally, Defendants move for dismissal of Terry Peterson as a defendant. For the reasons stated below, Defendants' motion is GRANTED in part and DENIED in part.

### Background

Plaintiffs, Cabrini-Green Local Advisory Committee (hereinafter "LAC")[1] together with seven residents of the Cabrini-Green public housing development (hereinafter "Cabrini"), filed an eight-count complaint against Defendants, Chicago Housing Authority (hereinafter "CHA")

---

[1] The LAC is a tenant organization representing Cabrini residents.

1



and Terry Peterson, Chief Executive Officer of the CHA, regarding the CHA's decision to demolish fifteen buildings known as Cabrini Extension South and Cabrini Row Houses (collectively "Designated Buildings") and replace them with mixed-income housing. This lawsuit revolves around what will happen to the current residents when the Designated Buildings are demolished.

Counts I through VI are brought under 42 U.S.C. § 1983. Plaintiffs allege that Defendants' relocation practices unlawfully exacerbate and perpetuate residential housing segregation in violation of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604 (Count I); FHA Regulations, 42 U.S.C. § 3608(e)5, 24 C.F.R. §§ 960.103(b), 903.7(o)(1) (Count II); Executive Orders 11063 and 12892 (Count III); Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and regulations 24 C.F.R. §§ 1.4(b)(1), (6) (Count IV); Quality Housing and Work Responsibility Act ("QHWRA"), 42 U.S.C. § 1437c-1(d)(15) (Count V), and the Illinois Civil Rights Act, 740 ILL. COMP. ST. 23/5(a) (Count VII). Count VI alleges Defendants' failure to consult Plaintiffs regarding demolition and relocation plans and failure to develop a conversion plan violates § 202 of the Omnibus Consolidated Rescission and Appropriations Acts ("OCRA") of 1996, (Public Law 104-134; 110 Stat. 1321-279), and regulations 24 C.F.R. § 971.7(b), 971.9(a)-(c). Count VIII alleges Defendants' premature issuance of relocation notices violates the Relocation Rights Contract.

Redevelopment of the Designated Buildings is part of the CHA's larger Plan for Transformation (hereinafter "Plan"). The Plan, which began in 2000, is a 10-year, $1.5 billion program intended to revitalize public housing in Chicago by tearing down failed developments and replacing them with mixed-income housing. As part of the Plan, the CHA entered into a

2

Relocation Rights Contract (hereinafter "RRC") which applies to all persons who were CHA residents as of October 1, 1999. The RRC requires the CHA to provide various relocation services and requires that, prior to relocating any tenant, the CHA "will make a good faith effort to enter into a Redevelopment Agreement with the LAC that reflects any property specific understandings with respect to the redevelopment process." (Compl. ¶ 45). It also grants "families originally from the site first priority to rent one of the new or rehabilitated units." (*Id.* ¶ 46). The RRC is intended to make sure the overall redevelopment plan is acceptable to all parties and to minimize the disruption that would result from residents being forced to move prematurely.

The CHA slated the Designated Buildings for closure in 2002 and 2003 because of high vacancy rates and extensive problems with the buildings' heating, plumbing, and electrical systems, among other things, which make them unsafe and nearly uninhabitable. Late in 2003, the parties met to discuss future plans for the Designated Buildings and allegedly agreed that the CHA would hire an urban planner to assist in creating a master redevelopment and relocation plan. Soon thereafter, Plaintiffs requested the CHA's written assurance that no buildings would be closed prior to completion of the master plan. No such assurance was forthcoming.

In early 2004, the CHA contends that its representatives visited the Designated Buildings and spoke with some of the residents regarding its demolition plans. The CHA allegedly assured the residents that when the buildings were demolished, they would have a choice between remaining in public housing or moving to private housing using a Section 8 voucher. The process continued to move along and, shortly thereafter, the CHA and LAC chose an urban planner to begin work on a redevelopment plan. Then, on April 20, 2004, without consulting

3

Plaintiffs and without a redevelopment plan in place, the CHA issued 180-day relocations notices to all residents of the Designated Buildings, which stated in part: "This letter is notice that the CHA is planning to demolish the building where you live . . . . In the next 180 days the [CHA] Relocation Department will work with you to move to another public housing apartment or to Section 8." (Compl. ¶ 68).

The same day, the CHA informed the LAC that it would meet with them on April 22 to discuss relocation and redevelopment issues. At that meeting, the LAC objected to the notices as premature and requested that they be rescinded until a redevelopment plan was in place. The CHA ultimately refused to rescind the notices and moved forward with relocation plans by holding a series of six relocation fairs, where residents again allegedly were informed that "they could remain at Cabrini or go to a temporary Section 8 unit, and preserve their right to return to the new units being built at Cabrini." (Def. TRO Brief, Ex. F, ¶ 6). The CHA also allegedly informed residents that they could change their relocation choice at any time prior to their move. (*Id.*)

On June 3, 2004, Plaintiffs filed suit to halt the redevelopment process until a detailed redevelopment and relocation plan was in place. Plaintiffs complain the 180-day relocation notices are premature in that even though the CHA may have promised residents that they could remain at Cabrini during the relocation process, the CHA had not yet identified units where the residents could live. Plaintiffs allege that six months is not enough time to identify and prepare enough temporary relocation units within Cabrini for all families who choose that option. (Pl. TRO Brief, Ex. D, p. 12). Nor, according to Plaintiffs, is six months enough time for families to qualify for or use a Section 8 voucher. (*Id.*) Thus, according to Plaintiffs, unless the 180-day

term is tolled or withdrawn, residents will be forced to move out of Cabrini unnecessarily and will end up in racially segregated neighborhoods, with high levels of poverty, troubled schools, inadequate social services, and high crime. In support of this contention, Plaintiffs cite several studies based on the aftermath of the CHA's recent relocation practices, including the relocation of other Cabrini residents. (Compl. ¶¶ 79-81; Pl. TRO Brief, at 1 n.4).

## Discussion

I.      Proper Parties

As a preliminary matter, the Court will address issues raised regarding the LAC's right to sue under § 1983 and whether Defendant Peterson should be dismissed.

A.      LAC as Plaintiff

Defendant contends that the LAC cannot sue under 42 U.S.C. § 1983 because it is not an active corporation and therefore not a "person" within the meaning of the statute. Specifically, Defendant points out that the LAC's status as an Illinois corporation was dissolved on August 2, 1999. (Def. Memo, Ex. 1) Plaintiffs admit the LAC was dissolved, but claim that its corporate status was reinstated on July 30, 2004 and is retroactive to the date of dissolution. No evidence of reinstatement has been provided.

Regardless of the LAC's corporate status, Plaintiff argues that it is a "person" for § 1983 purposes because it is a federally authorized resident council.[2] Indeed, the complaint does not refer to the LAC as a corporation, but describes it as a "tenant organization representing the residents of Cabrini-Green." (Compl. ¶ 11). All residents over eighteen years of age are

----

[2] Federal regulations require a local housing authority to "recognize a duly elected resident council as the sole representative of the residents it purports to represent. . ." 24 C.F.R. 964.18(a)(1).

members of the LAC. (*Id.*) It is empowered, among other things, "to act for and on behalf of the residents who live in the Cabrini-Green development" and "to negotiate, agree upon and execute contracts, agreements or other binding relationships, on behalf of the tenants of the development with the Chicago Housing Authority. . ." (*Id.* ¶ 12).

Unincorporated organizations have been found to be "persons" entitled to bring suit under § 1983. *Lippoldt v. City of Wichita*, 265 F. Supp.2d 1228, 1235-36 (D. Kan. 2003) (loosely-knit group of anti-abortion activists); *Mille Lacs Band of Chippewa Indians v. State of Minnesota*, 853 F. Supp. 1118, 1127 (D. Minn. 1994) (Indian tribe); *Elk Grove Firefighters Local No. 2340 v. Willis*, 391 F. Supp. 487, 491 (N.D. Ill. 1975) (labor union). This is particularly true where the organization acts in a representative capacity and "has a loss or deprivation coincident with that of the member individuals." *Elk Grove Firefighters*, 391 F. Supp. at 489. This reasoning is in keeping with the purpose of § 1983, which is "the vindication of individual interests against state action." *Lippoldt*, 265 F. Supp.2d at 1235 (citation omitted). The only unincorporated associations found not to be "persons" under § 1983 have been political subdivisions of a state. *Id.* Neither party contends that the LAC is a political subdivision of a state. Moreover, Defendant does not dispute that the LAC is representing the interests of Cabrini residents. The Court finds the LAC has brought suit in an effort to protect the civil rights of its members, the residents of Cabrini, and that it is an appropriate body to do so. Thus, the LAC is a "person" entitled to seek relief under § 1983.

B.      Terry Peterson as Defendant

Plaintiffs have sued the CHA and Terry Peterson in his official capacity as Chief Executive Officer of the CHA. Defendants move to dismiss all claims against Peterson as

redundant under *Monell v. Dep't. of Social Services*, 436 U.S. 658 (1978). The Court agrees.

Official-capacity suits "'generally represent only another way of pleading an action against an entity of which an officer is an agent.' As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (quoting *Monell* 436 U.S. at 690 n.55) (citation omitted).

Each count of the complaint is brought against both Peterson in his official capacity and the CHA. No claim is made against Peterson personally. Under *Monell*, each claim against Peterson is really a claim against the CHA. 436 U.S. at 690. Plaintiffs cite no authority to the contrary. Instead, they claim Peterson is a proper defendant because his behavior is at issue in the case. This argument misses the point. A claim based on Peterson's behavior in his official capacity is simply a claim against the CHA. Therefore, it is redundant to name both as parties. Plaintiffs argument that it is premature to dismiss Peterson before they have had an opportunity to take discovery is likewise misdirected. Discovery as to Peterson's conduct in his capacity as CEO of the CHA is available whether or not he is a named defendant. Defendants' motion to dismiss all claims against Peterson is granted. All claims remain against the CHA, however, except as explained below.

II.     Motion to Dismiss under Rule 12(b)(1) for Lack of Standing and Mootness

Defendants move to dismiss Counts I through V and Count VII pursuant to Fed. R. Civ. P. 12(b)(1), claiming Plaintiffs have failed to present a case or controversy and therefore lack standing under Article III of the constitution. As explained below, the Court finds that Plaintiffs

7

have presented sufficient facts to show that they have standing.

When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must establish that all jurisdictional elements have been satisfied. *Kontos v. U.S. Dep't. of Labor*, 826 F.2d 573, 576 (7th Cir. 1987). The court may look beyond the allegations of the complaint and consider whatever evidence has been submitted. *Roman v. United States Postal Serv.*, 821 F.2d 382, 385 (7th Cir. 1987). Where standing is challenged as a factual matter, the plaintiff bears the burden of supporting the allegations with a preponderance of the evidence, or proof to a reasonable certainty, that standing exists. *Retired Chicago Police Assn. v. City of Chicago*, 76 F.3d 856, 862 (7th Cir. 1996). Standing is to be evaluated based on the facts as they existed at the time the complaint was filed. *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 570 n.4 (1992).

To have standing, a plaintiff must show that he has suffered, or is about to suffer, some actual or threatened injury caused by defendant's actions. *Alschuler v. Dep't of House. & Urban Dev.*, 686 F.2d 472, 476 (1982) (citation omitted). The injury must be distinct and palpable, and not abstract, conjectural or hypothetical. *Allen v. Wright*, 468 U.S. 737, 751 (1984) (citations omitted). Plaintiff need not wait until "the consummation of the threatened injury to obtain preventative relief." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (citations omitted). In addition, the injury must be likely to be redressed by the relief sought. *Lujan*, 504 U.S. at 561.

On April 20, 2004, Defendants delivered relocation notices to over 300 Cabrini families stating that their homes were scheduled to be demolished in 180 days. This lawsuit followed. Defendants contend that Plaintiffs lack standing because the redevelopment process, and more specifically, the relocation notices have caused no actual or threatened injury to Plaintiffs.

8

Defendants claim they have repeatedly informed the affected residents that they will have the option to (a) move into another unit within Cabrini during the redevelopment process, or (b) move to Section 8 housing and return to Cabrini once the redevelopment is complete. Defendants argue that because they have made these promises and intend to live up to them, there is no real risk that residents who want to remain at Cabrini will be forced out.

Plaintiffs, on the other hand, argue that the CHA's promises are impossible to fulfill because there was no detailed redevelopment and relocation plan in place when the relocation notices were issued. Plaintiffs contend that 180 days is not enough time to identify and prepare alternate units within Cabrini for all residents who choose that relocation option. Nor is 180 day sufficient time to qualify for and use a Section 8 voucher. Accordingly, Plaintiffs allege that when those 180 days are up, the residents will be funneled into predominantly black, poverty-stricken, high-crime communities far from their existing support network. Once this occurs, it is likely that they will become more transient and more detached from work, school and social services, making it more likely that they will be denied the right to move back to Cabrini once redevelopment is complete.

The Court finds Plaintiffs have shown by a preponderance of the evidence that Defendants' decision to issue 180-day relocation notices to over 300 families without a redevelopment plan in place has caused actual and threatened harm. While the CHA assured the families that they could stay at Cabrini during redevelopment or choose to move to private housing using Section 8 vouchers, Plaintiffs have put forth evidence that six months is not long enough to carry out either process. Further, Plaintiffs point to several studies in support of their contention that similar planning practices have resulted in other Chicago public housing residents

9

being relocated to racially segregated, poverty-stricken, high-crime communities. (Pl. TRO Brief, Ex. A-C). The risk that Plaintiffs could face the same fate in this case amount to a distinct and palpable injury in the eyes of the Court. Mere assurances are insufficient to alleviate the threatened harm absent some showing that they are attainable before the end of the notice period. The CHA has made no such showing.

Further, the Court is satisfied that the injunctive relief sought is likely to redress the alleged injury. Plaintiffs seek a limited injunction requiring Defendants to negotiate with them in good faith over the relocation and redevelopment process and restraining Defendants from carrying out the 180-day notices until a specific plan is developed. Therefore, the Court finds the Plaintiffs have standing.[3]

Next, Defendants argue that Counts I through V and Count VII should be dismissed as moot because Defendants have repeatedly assured Plaintiffs that they can remain at Cabrini during the redevelopment process, and they are now in the process of living up to those promises. Plaintiffs disagree, arguing that if the suit is dismissed, Defendants are free to change their minds. "It is well settled that a 'defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 189 (2000) (quoting *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 289 (1982)). Otherwise, a defendant could return to his or

---

[3] Defendants also argue that no case or controversy exists because in accordance with their promises, they now are negotiating with Plaintiffs over the relocation process and have begun to relocate residents within Cabrini. This argument has no bearing on the standing issue, which must be determined at the time the complaint was filed. *Lujan*, 504 U.S. at 570. These detailed relocation negotiations began only after the Court issued a temporary restraining order and have continued "under the Court's supervision and guidance." (Def. Reply, at 2).

her ways after dismissal. Thus, a case is mooted by the defendant's voluntary conduct only if it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (citing *United States v. Concentrated Phosphate Exp. Ass'n*, 393 U.S. 199, 203 (1968)). The heavy burden of convincing the court that the "challenged conduct will not start up again lies with the party asserting mootness." *Id.*

While the parties have made progress with respect to developing and implementing a detailed relocation plan, they have done so pursuant to a temporary restraining order and with significant Court involvement.[4] This progress, while encouraging, has been plagued by continuous disputes over the details of the relocation process. Moreover, while the parties appear to be cooperating, attempts at settlement have been unsuccessful. Given these factors, the Court cannot say with absolute certainty that the alleged unlawful behavior will not recur if the complaint is dismissed. Indeed, it seems more likely that the negotiations would fall apart, and the parties would end up back in court. Therefore, Plaintiffs' claims are not moot.

I.     Motion to Dismiss under Rule 12(b)(6) for Failure to State a Claim

Defendants move to dismiss Counts II through VI for failure to state a cause of action. In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court views the allegations of the complaint as true. *Marshall-Mosby v. Corp. Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). All well-pleaded facts and inferences therefrom are viewed in the light most favorable to the plaintiff. *Id.* A Rule 12(b)(6) motion should be granted only if it appears beyond doubt that plaintiffs can prove no set of facts that would ultimately entitle them to relief.

---

[4] No preliminary injunction was entered because Defendants agreed, for the time being, to maintain the status quo.

*Id.*

According to Defendants, under *Gonzaga University v. Doe*, 536 U.S. 273, 290-91 (2002), only statutes can confer a private right of action, therefore Counts II and III, which are based on implementing regulations and executive orders, must fail. These very arguments were addressed and rejected on a motion to dismiss in *Wallace v. CHA*, 298 F. Supp.2d 710, 718-22 (N.D. Ill. 2003). The court ruled that the very same implementing regulations and executive orders are enforceable through § 1983. *Id.* at 719-20. The *Wallace* court also rejected Defendants' argument that no § 1983 claim exists under the FHA and QHWRA because the language of those statutes fail to clearly and unambiguously create rights for a protected class. *Id.* at 719. Again, the *Wallace* court was addressing the same statutory sections which are at issue in this case. Defendants make no novel arguments, nor have they attempted to distinguish the *Wallace* opinion, which the Court finds persuasive. Accordingly, Defendants' motion to dismiss Counts II, III and V is denied. By the same token, the Court finds a private right of action exists under § 202 of OCRA and its implementing regulations. Defendant's motion to dismiss Count VI is therefore denied.

Count IV is based on Title VI of the Civil Rights Act, § 2000(d) and implementing regulations 24 C.F.R. §§ 1.4(b)(1), (6). Defendants argue dismissal is required under *Alexander v. Sandoval*, 532 U.S. 275 (2001). Plaintiffs respond simply by arguing that they have made out a claim of intentional discrimination. The Court agrees with Defendants.

Private individuals may sue for intentional discrimination under § 601. *Id.* at 279-80. However, this private right of action does not include a private right to enforce disparate impact regulations. *Id.* at 285. Count IV of the complaint includes no allegation of intentional

discrimination. At best, Plaintiffs allege Defendants "know" their relocation plan will exacerbate and perpetuate residential housing segregation, and that the effects of Defendants' conduct are "deliberately segregative." (Compl. ¶¶ 117-18). Moreover, as stated in *Wallace*, the regulations cited by Plaintiffs do "not relate to intentional conduct proscribed and actionable under § 601." *Wallace*, 298 F. Supp.2d at 721. Thus, the Court finds Plaintiffs have failed to state a claim for intentional discrimination. Count IV is therefore dismissed.

Finally, Defendants urge the Court to decline to exercise supplemental jurisdiction over Plaintiffs' state law claims. Because several federal claims survive the motion to dismiss, Defendants' request is denied.

II.     Stay or Dismissal of Present Action Based on *Wallace*

Defendants have moved to dismiss or stay this case pending the outcome of *Wallace v. CHA*, 03 C 491, which is currently pending in this district. "A federal suit may be dismissed 'for reasons of wise judicial administration . . . whenever it is duplicative of a parallel action already pending in another federal court.'" *Serlin v. Arthur Andersen & Co.*, 3 F.3d 221, 223 (7th Cir. 1993) (citation omitted).[5] A suit is duplicative if the "'claims, parties, and available relief do not significantly differ between the two actions.'" *Id.* (citation omitted). According to Defendants, the Plaintiffs in this case fall within putative class in *Wallace*, their claims are the same as those brought by the *Wallace* class, and they are seeking the same relief. Not surprisingly, Plaintiffs dispute all three issues.

---

[5] Defendants suggest dismissal is appropriate based on *Serlin*, which involved a single plaintiff who brought two age discrimination suits against his former employer, the second of which was dismissed. 3 F.3d at 222-23. The present case is distinguishable because it involves seven plaintiffs and a tenant organization, none of whom appear to fall into the class certified in *Wallace*.

The following class was recently certified in *Wallace*:

> All present and former public housing residents who have moved or will move out of CHA public housing using a Housing Choice Voucher (also known as a Section 8 Certificate or Section 8 Voucher) and who moved or will move into segregated neighborhoods using a Housing Choice Voucher after October 1, 1999, and have been, continue to be, or will be adversely affected by Defendants' and their agents' segregative and discriminatory actions, policies, and practices, as alleged in Plaintiffs' first amended complaint.

*Wallace v. CHA*, No. 03 C 491, at 21 (N.D. Ill. October 6, 2004). The Court finds that not all of the Plaintiffs in this case fall within the *Wallace* class. To be a class member, a resident must move or have moved using a Section 8 voucher. The individual Plaintiffs in this case have not relocated using a Section 8 voucher, nor do they intend to, even though it is an available option. Indeed, the present suit was filed because the individual Plaintiffs in this case, as well as a significant number of other affected residents, allegedly want to remain at Cabrini throughout the relocation and redevelopment process. Moreover, the *Wallace* class does not appear to encompass Plaintiff LAC, the tenant organization which represents all of the affected residents. Defendant provides no persuasive argument or evidence to the contrary, thus their argument for dismissal or stay based on *Wallace* fails on this point alone.

Even if there is some overlap in Plaintiffs, Defendants have not shown that the relief sought is the same. As Plaintiffs pointed out, the *Wallace* class is seeking to remedy the voucher administration process, while Plaintiffs in this case are seeking to force the CHA to negotiate over the relocation of families who do not wish to leave public housing when their current homes are demolished. Thus, the outcome of *Wallace* will not dispose of Plaintiffs' claims. Defendants' motion to dismiss or stay this case pending the outcome of *Wallace* is denied.

14

## Conclusion

Defendants' motion to dismiss Terry Peterson as a defendant is GRANTED and

Defendant Peterson is hereby dismissed. Defendants' motion to dismiss Count VI for failure to

state a claim is also GRANTED. The motion is DENIED in all other respects.

IT IS SO ORDERED.

_____
Dated

_____
The Honorable William J. Hibbler
United States District Court